# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| KENNETH MARCUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:13-CV-158 |
| | ) | |
| GRAPHIC PACKAGING INTERNATIONAL, | ) | |
| INC., and CIGNA LEAVE SOLUTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is Defendants Graphic Packaging International, Inc. ("GPI"), and Life Insurance Company of North America's ("LINA") (incorrectly identified as Cigna Leave Solutions in Plaintiff's Complaint) fully-briefed Motion to Dismiss or, In the Alternative, to Enforce. (Docket # 26.) Defendants contend that dismissal or enforcement of the Court's previous Order compelling Kenneth Marcum to supplement his Answers to GPI's Interrogatories is appropriate because he has continued to hinder discovery by providing incomplete and inaccurate Answers to GPI's Interrogatories and has made several material misrepresentations to the Court and Defendants. At oral argument on October 18, 2013, Marcum responded that while his answers may be "spotty," they are not "elusive," and dismissal would be harsh at this early stage of discovery.

The motion was referred to the undersigned Magistrate Judge by District Judge Rudy Lozano for the issuance of a Report and Recommendation. (Docket # 28.) Having reviewed the record and in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72-1, the undersigned Magistrate Judge recommends that Defendants' motion to dismiss be denied, the motion to enforce be granted, and Marcum receive sanctions

1

commensurate with his behavior. This Report and Recommendation is based on the following facts and principles of law.

## A. FACTUAL AND PROCEDURAL BACKGROUND

Marcum filed this Family and Medical Leave Act ("FMLA") case against Defendants in state court on April 22, 2013. (Docket # 1.) After the case was removed, the parties held a Rule 26(f) Preliminary Pretrial Conference. The Court subsequently adopted the Report of the Parties' Planning Meeting and set the Rule 26 initial disclosure deadline for July 13, 2013, and established a May 16, 2014, discovery deadline. (Docket # 13.)

On August 16, 2013, Defendants filed a Motion to Compel asking the Court to direct Marcum to fully respond to GPI's Interrogatories, tender his initial disclosures, and pay Defendants' attorney's fees associated with the motion. (Docket # 21.) Defendants argued that prior to filing the motion they repeatedly attempted to contact Marcum's counsel to inform him that his Answers were late, and after the initial Answers were received, to discuss their deficiencies.

The Court set the matter for a hearing and ordered Marcum and his counsel to be present. (Docket # 22.) At the August 28, 2013, hearing, however, neither Marcum nor his counsel appeared. After hearing argument and reviewing the record, the Court granted Defendants' motion in part stating "Pla ordered to serve supplemental responses to Dft GPI's Interrogatories #4, #5, #7, #10, #13, and #14 . . . by 9/6/2013." (Docket # 23.) The Court took the issue of fees under advisement and set a show cause hearing for September 20, 2013, so Marcum and his counsel could explain why they were not present at the August 28, 2013, hearing. (Docket # 24.)

On September 5, 2013, Marcum submitted his supplemental Answers to GPI's Interrogatories. On September 18, 2013, Defendants filed the instant motion, arguing that

Marcum's supplemental Answers to GPI's Interrogatories 4, 5, 10, 13, and 14 were deficient and that dismissal was warranted. (Docket # 26.) On September 20, 2013, the Court conducted the show cause hearing. (Docket # 27.) During the hearing, Marcum disputed GPI's contention that his supplementary Answers were deficient. Given the dispute, the Court set the Motion to Dismiss for oral argument on October 18, 2013. (Docket # 36.) In the meantime, on September 25, 2013, the Court awarded Defendants attorney's fees for their Motion to Compel under Rule 37(a)(5)(A) in the amount of $3,085.50. (Docket # 32.)

At the October 18, 2013, hearing, the Court and counsel discussed at length the adequacy of Marcum's supplemental Answers to GPI's Interrogatories 4, 5, 10, 13, and 14.

In particular, Interrogatory 4 asks about when, since January 2008, Marcum sought medical assistance, who he saw, the care sought and received, and any related documents. In his initial Answer, submitted before the Motion to Compel, Marcum did not object to the Interrogatory and represented that he was sending executed medical release forms, but did not actually send them.

After the Court granted the Motion to Compel, Marcum supplemented his Answer by tendering an executed, but blank, medical release form. The form was essentially useless, however, since Marcum failed to indicate who to direct the releases to, the dates for treatment, care received, or any documentation.

At the October 18, 2013, hearing, and in his response brief, Marcum argued that because he does not have his medical information the executed blank medical release form should be sufficient since the Defendants do have access to this information. In addition, Marcum argued that his medical records are irrelevant now, anyway, because he abandoned any claim for emotional distress. In response, Defendants underscored the relevancy of the information and

3

reiterated that they do not have access to his medical records.  Ultimately, by the end of the hearing, however, Marcum expressed a willingness to comply.

The Court next addressed Interrogatories 5 and 13 asking Marcum to name and provide contact information for any persons he believes have knowledge about the case or that he discussed it with, and the matters about which they have knowledge.  In his initial Answers, before the Motion to Compel, Marcum indicated that while he talked to several persons about the case, they wanted to remain anonymous.  After the Motion to Compel was granted, Marcum supplemented his Answers by simply stating, without elaboration, "Ted Bates; Cherri Marcum; and April Kemp."

At the October 18, 2013, hearing, when asked why he had not yet provided the witnesses' contact information, Marcum claimed he did not know it.  When asked if that was entirely true, since one witness was his wife, Cherri Marcum, Marcum's counsel reiterated that Marcum only knew the witnesses by name and did not have their contact information.  When pressed further, however, Marcum, speaking directly to the Court, admitted that although he did not have any contact information at the time the Interrogatories were completed, he does so now.  Nevertheless, he still has not supplemented his Answers to Interrogatories 5 and 13.

Moving on, the Court took up Marcum's response to Interrogatory 10, asking for the components of his total damages and how they were calculated.  In his initial Answer, before the Motion to Compel, Marcum answered by stating that his attorney would calculate his damages.  After the Court granted the Motion to Compel, Marcum supplemented his Answer stating, in its entirety, "$19.00/hr x 40 = 760.00/wk, No unemployment, $15,200."

At the September 20, 2013, show cause hearing, Marcum repeatedly stipulated that he was limiting his damages to only lost wages.  Marcum also explained his brief supplementary

Answer as stating that he worked forty hours per week at $19.00 per hour for a weekly total of $760.00, and that $15,200 were his total lost wages, at the time he supplemented his Answers.

In his response brief, Marcum claimed that his damages were now "set forth in [his] demand letter." The demand letter, dated October 1, 2013, requests lost wages, attorney's fees, and a neutral letter of reference, and is apparently the first such letter the Defendants received.[7] What is disturbing, however, is the letter's unsupported assertion that Marcum's lost wages are now $1100.00 per week. The $340 difference from what he listed in his supplemental Answer is possibly attributed to Marcum's new assertion (first appearing in the demand letter) that he worked "approximately 5-10 hours of overtime per week," but because his figures and calculations remain unverified and unexplained, the actual reason is unclear.

Also included in the settlement demand for the first time is Marcum's demand for attorney's fees. Defendants argue that Marcum waived his demand for attorney's fees because they were not mentioned in prior interrogatory Answers and because Marcum's counsel has stipulated that the only damages he is seeking is lost wages. Marcum contends, however, that he did not waive his attorney fees and could not have done so since they are part of the statutory relief to which he is entitled.

Finally, Interrogatory 14 asks Marcum to list his e-mail addresses, telephone number, and any social media user identifications since January 2008. In his initial Answer, Marcum did not object and simply admitted having several e-mail addresses and a Facebook account, but provided no further information. After the Court granted the Motion to Compel, Marcum still

---

[7] Defendants contend that this is the third time Marcum has misled the Court about the existence of a settlement demand letter. First, in his Rule 26(a) disclosures, which were belatedly sent on August 21, 2013, Marcum did not list a damages amount, and instead stated "Plaintiff's damages have already been provided to Defendants in a settlement demand." Defendants argue that no such demand was ever sent. Second, at the show cause hearing, Marcum initially indicated that a settlement demand had been sent to Defendants. When pressed by the Court and Defendants on whether a settlement demand had actually been sent, however, Marcum's counsel stated that he was not sure.

refused to provide the information and instead supplemented his Answer with, "I have not posted anything regarding my employment or this lawsuit," a point reiterated in his response brief.

This explanation–while wholly inadequate and in violation of the Court's August 28, 2013, Order–is also seemingly untrue. In their reply brief, Defendants assert that Marcum posted on his Facebook wall a lengthy commentary that appears to refer to his termination and this lawsuit. Although the date of the post is not entirely clear, its content suggests it was written soon after Marcum's termination from GPI.

At the hearing on the instant motion, Marcum, speaking directly to the Court, stated that the Facebook post was not about GPI or any of its employees and did not involve this lawsuit. When asked what the Facebook post was actually about then, if not GPI and this lawsuit, Marcum stated that that was irrelevant.

## B. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) provides, in part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule . . . 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed; [or]
>
> (v) dismissing the action or proceeding in whole or in part . . . .

"The authority to sanction a non-compliant party also arises from the court's inherent power to manage its cases and achieve orderly disposition." *R R v. City of East Chi., Ind.*, No.

2:12-cv-93, 2013 WL 4674815, at *2 (N.D. Ind. Aug. 30, 2013) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 47 (1991)).  "[A]n award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery."  *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993).  In determining the appropriate sanctions, the court measures the proposed sanctions against the offending party's conduct.  *Barnhill v. United States*, 11 F.2d 1360, 1368 (7th Cir. 1993).

The Seventh Circuit has stated that, "a finding of willfulness, bad faith or fault . . . comes into play when dismissals are used specifically as a discovery sanction under Fed.R.Civ.P. 37."  *Maynard*, 332 F.3d at 467-68.[1]  "[A] court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith or fault, as long as it first considers and explains why lesser sanctions would be inappropriate."  *Id.* at 468 (internal citation omitted).

These "measures of culpability are each wholly distinct from one another."  *Marrocco*, 966 F.2d at 224.  Bad faith "is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order."  *Id.*  Fault, however, is "unconcerned with the non-complying party's subjective motivation" and instead describes "the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation."  *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (citation and internal quotation omitted).

---

[1] The Seventh Circuit has also found that dismissal may be used as a sanction "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (quoting *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998)). Sanctions for contumacious conduct are imposed under the Court's inherent power. *Large v. Mobile Tool Int'l, Inc.*, No 1:02cv177, 2008 WL 2116967, at *7 (N.D. Ind. May 20, 2008)("[W]hen the court uses its inherent power to root out contumacious conduct, no showing of willfulness, bad faith, fault, or even prejudice is required"). Because the Defendants only argue that Marcum should be sanctioned under Rule 37(b), the Court does not consider whether Marcum's conduct was sanctionable under the contumacious conduct standard.

## C. ANALYSIS

Upon a review of this record, there can be little question that sanctions should be imposed under Rule 37(b).

After the Court's August 28, 2013, Order, Marcum's supplemental Answers to Interrogatories 4, 5, 10, 13, and 14 are clearly inadequate. Marcum still has not provided medical information under Interrogatory 4, his Answers to 5 and 13 do not provide the contact information of the witnesses or what they purportedly knew, he appears to be backtracking on his Answer to Interrogatory 10, and the Answer to Interrogatory 14 may constitute a false statement, compounded by the statements made directly to the Court at the October 18, 2013, hearing.

The issue then is not so much whether sanctions should be imposed, because clearly they must be, particularly since there was at a minimum, fault (*i.e.*, a lack of reasonableness); rather, the question is whether the sanction should be dismissal. That question is framed by whether Marcum has exhibited exceptional misconduct or the type of willfulness, bad faith or fault spoken of by the Seventh Circuit. *Compare Sun v. Bd. of Trustees*, 473 F.3d 799, 811 (7th Cir. 2007) (finding dismissal an unduly harsh sanction because offending party's delay in complying with court order to answer outstanding interrogatories "was not so extreme as to warrant an entry of default"), *with Maynard v. Nygren*, 372 F.3d 890 (7th Cir. 2004) (affirming sanction of dismissal because the offending party had willfully and intentionally withheld evidence from opposing party).

Yet, dismissal should not be imposed unless the Court finds that a less severe sanction would be inappropriate. *Maynard*, 332 F.3d at 468 ("[A] court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith, or fault, as long as it first considers and explains why lesser sanctions would be inappropriate."). Stated another way, the

8

issue becomes whether less severe sanctions will remedy the damage. *See R R*, 2013 WL 4674815, at * 2 ("When assessing dismissal . . . for failure to comply with a court order, the court must consider whether . . . less drastic sanctions have been unavailing.").

In that regard, what the Defendants are seeking from Marcum is basic information in a FMLA case that should have been supplied months ago: medical information, witnesses, and damages. The fact they have not received that information rests entirely on Marcum. Yet, these long-standing deficiencies can be rectified through limiting his witnesses and damages, assessing attorney's fees, and staying his discovery until he produces the information sought.

The disturbing issue, of course, ordinarily would be the request for Marcum's social media information, *see generally Higgins v. Koch Dev. Corp.*, No. 3:11-cv-81, 2013 WL 3366278 (S.D. Ind. July 5, 2013) (finding that plaintiff's social media postings were discoverable upon threshold relevance showing), but Marcum never objected to the Interrogatory, failed to contest the Motion to Compel, did not appear at the hearing where the issue was initially considered, and never objected to the Court's finding of a threshold showing of relevance. And whatever can be said about its relevance before, it now clearly appears relevant given the one Facebook post displayed to the Court and Marcum's dubious assertion that it has nothing to do with his case. *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010) (finding plaintiffs' social media postings discoverable to extent they were reasonably calculated to lead to admissible evidence).

Given that much more time remains for discovery (a point Marcum continues to emphasize), that the deficiencies are easily rectified, and because this is the first time the Court has had to consider sanctions against Marcum for not obeying a discovery order under Rule 37(b)(2)(A), it is recommended that dismissal not be imposed in the face of lesser sanctions that

should, along with attorney's fees, Fed. R. Civ. P. 37(b)(2)(C), repair the damage. *Marrocco*, 966 F.2d at 223-24 (explaining that before imposing sanction of dismissal the court must first consider whether less severe sanctions will remedy the damage). And because the ultimate sanction of dismissal hangs by a thread, it should serve as sufficient motivation to get Marcum, and his counsel's cooperation.

Accordingly, the following sanctions are proportional to Marcum's misconduct: (1) limiting his potential damages to lost wages along with attorney's fees,[2] Fed. R. Civ. P. 37(b)(2)(iii); (2) limiting his witnesses to only Ted Bates, Cherri Marcum, and April Kemp, Fed. R. Civ. P. 37(b)(2)(ii); (3) establishing his lost wages per week at $760, Fed. R. Civ. P. 37(b)(2)(i); (4) ordering payment of one-half of the attorney's fees previously imposed within 30 days; (5) staying his discovery until he complies with this Order, Fed. R. Civ. P. 37(b)(2)(iv); and (6) that Marcum and his counsel pay Defendants' fees and costs associated with bringing this motion, Fed. R. Civ. P. 37(b)(2)(C). Moreover, Marcum should be warned that in the event these or any lesser sanctions are imposed, any further misconduct or failure to comply may warrant dismissal of his case. *Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir. 1993) ("A judge is not obliged to treat lawyers like children. But there should be an explicit warning in every case"). Finally, since it appears that some supplementation is required, Marcum should undertake to immediately supplement his discovery responses and initial disclosures.

### D. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Defendants' motion to dismiss be denied, motion to enforce be granted, and that the following

---

[2] "The plain language of the fee-shifting provision of the FMLA *requires* the award of attorneys' fees in cases where a violation of the FMLA is established." *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962, 968-699 (N.D. Ind. 2002) (emphasis in original) (finding that attorney's fees in FMLA actions are separate from an award of damages). Because the award of attorney's fees is required where a FMLA violation is established, and because attorney's fees are separate from an award of damages, Marcum's counsel could not have inadvertently precluded the recovery of attorney's fees when he stipulated that his client's damages were limited to lost wages.

sanctions be imposed on Marcum: (1) limiting his potential damages to lost wages along with attorney's fees; (2) limiting his witnesses to only Ted Bates, Cherri Marcum, and April Kemp; (3) establishing his lost wages per week at $760; (4) ordering payment of one-half of the attorney's fees previously imposed within 30 days; (5) staying his discovery until he complies with this Order; and (6) that Marcum and his counsel pay Defendants' fees and costs associated with bringing this motion.  NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendation.  28 U.S.C. § 636(b)(1)(B). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

SO ORDERED.

Entered this 29th day of October, 2013.

/S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge